UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

KRISTIN KATHERINE BAISH RICKER,
 on behalf of all others similarly situated.

                              Plaintiff

  VS.                                                      Case No. 1:25-cv-0692

DEBT RESOLUTION DIRECT LLC
 d/b/a Debt Advisors of America

                              Defendant

_____

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS THE CLASS ACTION COMPLAINT**

      Comes Now, Defendant Debt Resolution Direct LLC d/b/a Debt Advisors of America (hereinafter "DAA") by and through undersigned counsel, hereby files this Reply Memorandum in Support of its Motion to Dismiss the Class Action Complaint for failure to state a claim and for lack of standing to bring an action for injunctive relief and for good cause states as follows.

      Plaintiff Kristin Katherine Baish Ricker ("Plaintiff") filed an Opposition to Defendant's Motion to Dismiss ("Opposition") (Doc. 19), and a Notice of Supplemental Authority ("Notice") (Doc. 20). Plaintiff's argument focused on the unresolved question of whether text messages are covered under 47 U.S.C. § 227(c)(5), the statutory provision under which Plaintiff sued Defendant DAA. Defendant recognizes that there is a split of authority on this issue. Before Defendant addresses that issue, it would like to address the facts of this case as if the statute applies to both the telephone calls and text messages alleged, as those facts provide the basis for the Motion to Dismiss. Defendant addresses the telephone calls separately from the text messages because, despite the assertion to the contrary by the Plaintiff, the allegations related to the two different methods of contact are independent of each other.

1

**1. Plaintiff's Allegations Related to Telephone Calls Are Vague and Conclusory**

Plaintiff in her Opposition claims that she alleged that a "live representative" identifying himself as being from DAA spoke to her during the "third call" on May 1, 2025. *Opposition at pp. 3, 20, 21 citing Complaint at ¶¶ 16-19 (Doc 19)*. However, Plaintiff does not allege that the telephone caller identified himself as being from DAA. That fact is simply not alleged in the Complaint. Plaintiff states in her Opposition:

"During the second call, she explicitly instructed Defendant not to call her again, yet Defendant placed a third call minutes later, during which a live representative offered to "help reduce and consolidate" Plaintiff's debt and **identified himself as calling from "Debt Advisors of America**."" *Opposition at p. 20 citing Complaint (Doc. 1) at ¶ 18-19*. (Doc. 19)(emphasis added). Plaintiff repeats this misreading of the Complaint on page 21 of her Opposition citing ¶¶ 16-19 of the Complaint. Plaintiff **does not** allege in paragraph 19 of the Complaint that she spoke to someone from DAA.

Plaintiff, in her Complaint, alleges as follows:

"On May 1, 2025 Plaintiff received three automatically dialed call from the Defendant at caller ID (815) 643-1071". *Complaint at ¶16 (Doc.1)*. Plaintiff does not allege any **facts** to support either her conclusory allegation that the calls, which are from a Northern Illinois area code, were automatically dialed or were from the Defendant. Plaintiff does not make any allegation regarding who owns or controls the telephone number indicated or how it is connected to DAA. Plaintiff then alleges: "The first call was received at 10:14 a.m. Plaintiff rejected the call. The second call was received at 10:15 a.m. Plaintiff answered the call and told Defendant not to call her again." *Id. at ¶¶ 17-18*. Again, these allegations contain **no facts** to indicate that the calls were automatically dialed **or** that they were from the Defendant. Then Plaintiff alleges: "The third call

2

was received just eight minutes later at 10:23 a.m. Plaintiff answered the call and spoke to an individual who "offered to help reduce and consolidate her debt." *Id. at ¶19*. Plaintiff does not allege **facts** that the call was automatically dialed or that the person she spoke to was from DAA. Plaintiff does not allege that the representative identified himself as being from DAA. any DAA service was offered to Plaintiff during this call. This makes the case factually distinguishable from those cases in which a caller identified themselves as being a representative of the defendant. *See e.g. Marks v. Unique Lifestyle Vacations, LLC,* 2024 U.S. it. LEXIS 41804, 2024 WL 1051974 (E.D. Pa. Mar. 11, 2024); *Smith v. Am-Amicable Ins. Co.*, 2022 US Dist. LEXIS 62115, 2022 WL 1003762 (ED Pa. April 4, 2022).

The allegations in paragraphs 16-19 of the Complaint are the only allegations regarding the telephone calls. Plaintiff received 3 calls from a single number. There are no facts alleged which connect Defendant DAA to the (815) 643-1071 number. There is no allegation from which anyone could infer that the calls were automatically dialed. Twice Plaintiff answered and apparently spoke with someone, which would suggest that the calls were not automatically dialed.

Plaintiff, in her Opposition, attempts to **rewrite** her Complaint and says that the person she spoke to in her third call identified himself as being from Defendant DAA, citing paragraphs 18 and 19 of the Complaint, which simply **do not allege** that the caller identified himself at being from Defendant DAA. *See Complaint at ¶ 19* (Doc 1). Defendant DAA is only identified in the Complaint **after** Plaintiff received text messages from a **different** telephone number in which the sender was identified as Defendant DAA. *See Complaint at ¶ 20, 21* (Doc. 1). Plaintiff states on page 23 of her Opposition: "Each communication referenced Defendant's debt relief services and emanated from numbers linked to its business location." First, Plaintiff does not describe any communication from the caller in the first two calls. *Complaint at ¶¶ 16-18*. Second, as stated

above, Plaintiff did not identify DAA as a caller in the third call, only that the individual offered to help reduce and consolidate her debt. *Complaint at ¶ 19 (Doc 1)*. Finally, there is no factual support for the statement in the Complaint or in the Opposition that the telephone number "emanated" from numbers linked to Defendant's business location. The area code of the first number (815) is Northern Illinois, whereas the text message from Defendant came from (858) area code where Defendant's business is located in Southern California.

The TCPA provides liability for the person or entity who physically placed the call. *See In re Dish Network*, LLC , 28 F.C.C. Rcd. 6574, 6583 (2013); 47 U.S.C. § 227(c)(5); Therefore, the allegations matter. Plaintiff does not allege **facts** that Defendant or an agent of the Defendant made the calls. There are simply no facts alleged from which the court can infer that the alleged telephone calls described in paragraphs 16-19 of the Complaint, were made by Defendant DAA. The allegations require the Court to speculate as to who made the calls from the Northern Illinois are code number and thus the Complaint is subject to dismissal. *Woodard v. Health Ins. All.,* 2024 WL 942629 at *2 (N.D. Ill. Mar 05, 2024). Plaintiff simply uses a telephone number and the language of the statute to claim a violation of the statute. In *Wilson v. Medvidi*, 2025 WL 2856295 (N.D. Cal 2025), cited by Plaintiff for the proposition that text messages were covered by section 227(c)(5) of the TCPA, the Court still dismissed the case for the failure of the factual connection between the Defendant and the calls.

Therefore, as for the three (3) telephone calls, Plaintiff has failed to state a claim for relief against Defendant DAA, as the allegations are mere repetitions of the language of the statute.

### 2. The Text Messages Did Not Violate the TCPA

As set forth above, Plaintiff does not connect the telephone calls to Defendant DAA and the only connection between the calls and the texts is an unknown, but allegedly short period of

4

time. *Complaint at ¶ 20 (Doc 1)*. Thus, Defendant addresses the two text messages which were admittedly from DAA. These messages, as alleged, were made with Plaintiff's consent. Moreover, the text messages were not solicitations. In her Opposition to the Motion to Dismiss, Plaintiff conveniently does not mention her text message to the Defendant's representative, which is only partly visible in the Complaint, thanking the representative for his contact information. *Id. at ¶22*.

Presuming for the moment, that 47 U.S.C. § 227(c)(5) applies to text messages, the first question is are the alleged text messages covered by the statute. The Complaint alleges a total of 3 text messages back and forth between Plaintiff and DAA. The first message is simply a confirmation that Plaintiff opted-in to receive messages from DAA. *Complaint at ¶ 22 (Doc.1)*. The message does not offer any service or a link to a website or any mention of DAA's products or services. It is simply a confirmation of Plaintiff's act of opting in to messages. *Id.* The message gave the Plaintiff the opportunity to respond by replying STOP to indicate that she did not opt-in or that she no longer wanted to receive the messages. *Id*. None of the cases cited by Plaintiff find that a defendant is liable for a simple opt-in text message.

The second message was simply contact information of a DAA representative. *Complaint at ¶ 22 (Doc. 1)*. The third text message was from Plaintiff to Defendant DAA in which she confirmed receipt of the information. Plaintiff stated, "Thanks Ruben I got it." *Id.* The only implication of such a text response from Plaintiff is that she consented to receiving the information that she wanted and was thankful to Ruben for providing the information. This is particularly true since the "thank you" message followed a message to which Plaintiff could have responded STOP to prevent unwanted messages and instead Plaintiff confirmed receipt and thanked the messenger. These facts differ from the *Mujahid v. Newity, LLC,* 2025 U.S. Dist. LEXIS 221088 (N.D. Ill., November 10, 2025), where the Court refused to dismiss the case where the defendant sent a link

5

to its website advertising its financial services. Defendant DAA did not include a website link to any offerings, only its representative's email address and contact information. *Complaint at ¶ 22 (Doc. 1)*. The content of the text messages is not a "solicitation." *Id.*

Plaintiff does not point to any case law in which simply providing a message with contact information is considered to be a "telephone solicitation" pursuant to 47 C.F.R. §64-1200(c). Plaintiff attempts to analogize the facts of this case to cases where a plaintiff received multiple calls, voicemails or a defendant used fake company names is a confusing and unpersuasive attempt to misdirect the attention of the Court. *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, (N.D. Ill, 2010), dealt with advertisements for DVDs and it is completely inapposite to the case at hand, which involves simply 2 innocuous and apparently requested text messages.

A violation of 47 U.S.C. §277(c)(5) requires that a plaintiff receive more than one "telephone call" in a 12-month period. As mentioned above, Plaintiff has failed to point to any case in which either an opt-in or a simple text with contact information is counted as a "telephone solicitation" pursuant to the regulation. Even if the contact information is somehow considered a solicitation, the opt-in message could certainly not be considered a solicitation. Therefore, there could only be one message received from Defendant DAA during the 12-month period and therefore, there is no violation of the statute, which requires more than one call in a 12-month period.

### 3. Plaintiff Does Not State a Claim for Injunctive Relief

Plaintiff apparently concedes that she does not have standing to claim injunctive relief. *See Opposition at p. 24-25 (Doc 19)*. Moreover, she has failed to allege facts from which the class would be entitled to injunctive relief. Plaintiff does not make any allegations about other class members, only that she believes they exist. *Complaint at ¶¶ 31-34 (Doc 1)*. Plaintiff's case is

distinguishable from *Synder v. Ocwen Loan Servicing, LLC*. 258 F. Supp.3d 893 (N.D. Ill 2017), because she did not have a live claim for injunctive relief when she filed her Complaint. In *Snyder*, the defendant Ocwen updated its business records after the suit was filed so that the named plaintiffs would no longer be called. *Synder,* 258 F. Supp.3d at 900. In addition, other members of the proposed class continued to receive calls during the pendency of the action. *Id*. Here, the alleged calls and texts to Plaintiff stopped on the same day they allegedly began, May 1, 2025, well before Plaintiff filed suit. *Complaint at ¶¶ 16-22* (Doc 1).

> The Supreme Court has recognized that when the time frame for the alleged injury is by nature temporary, a named plaintiff can continue to pursue the interests of the class even after his own claim has been rendered moot. *Gerstein*, 420 U.S. at 110 n.11, 95 S.Ct. 854. Otherwise, a defendant could evade prospective injunctive relief simply by inflicting harms that are too transitory to last the length of an entire lawsuit or, in this case, by ceasing the alleged violations with respect to plaintiffs who step forward. **In order for this exception to apply, a court still requires the named plaintiff to have a live claim at the time that the complaint was filed**. See *Sosna v. Iowa* , 419 U.S. 393, 402, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) ; *Robinson* , 868 F.2d at 968 ("[A] representative's claim must at least be live when he files the case.").

*Snyder v. Ocwen Loan Servicing, LLC*, 258 F.Supp.3d 893, 901 (N.D. Ill. 2017) (emphasis added).

Plaintiff did not have a claim for injunctive relief when she filed suit, so her claim is moot.

### 4. Violation of 47 U.S.C. § 227(c)(5) Does Not Apply to Text Messages

Defendants recognize that there is a split in authority among District Courts as to whether the Section 227(c)(5) of the TCPA regulates text messages. All the cases that hold that a text message is regulated under the statute, do so after **enlarging** the meaning of "telephone call" to include a text message or SMS message. The theory seems to be that people use their cellular telephones for communicating via text message and therefore, the FCC and the court have expanded the meaning of the statute to cover that communication. Plaintiff insists that the statute

is meant to cover " telephone communications" not "telephone calls," yet that is not what the statute says.

Plaintiff makes three analogies: (1) a statute that applies to parked "vehicles" applies to cybertrucks and sedans even though those vehicles were not in existence at the time the statute was enacted; (2) that a 1925 statute applicable to the "news media" applied to television; and (3) that employment contracts applied to independent contractors. *See Opposition at p. 12-13 (Doc. 19)*. However, the analogy does not hold because the language of those statutes was general, not specific. Cybertrucks and sedans are still "vehicles"; Television shows can be "news media" and employment contracts are employment contracts even if they deal with independent contractors rather than "employees."

The TCPA statute does not say that it applies to "communications by means of telephone." It says it applies to "telephone calls." 47 U.S.C. § 227(c)(5). Telephones, particularly smart telephones, are essentially small computers that we walk around with in our pockets. People use their telephones for checking electronic mail ("email") and for all sorts of applications ("APPs"), many of which have messaging features, including Instagram and Facebook, many of which offer "solicitations." Yet, no one is alleging that electronic mail or the messaging on other APPs received via the telephone are subject to the TCPA.

The fact that only section 227(b) of the statute refers to numbers connected to "paging services" shows that Congress understood the difference between different types of services and it did not want automated calls to be directed to paging services. 47 U.S.C. § 227(b)(1)(A)(iii). The reference to paging services does not change the fact that there is a clear difference between a telephone call and a text message. First, typically one's phone does not ring for a text message. A text message is much more like an email than a telephone call in that it is easier to ignore. An

immediate response is generally not necessary. A text message can be deleted unopened. Alternatively, it can be saved for future reference if it contains information that is useful to the recipient. A text message or an SMS message is a communication that is fundamentally different than a "telephone call." If the legislature wants to regulate text messages as an invasion of privacy under the TCPA then it can amend the statute to be clear that it applies to text messages and not have a regulatory agency or the courts enlarge the statute *sua sponte*.

In *Mujahid v. Newity, LLC*, 2025 U.S. Dist. LEXIS 221088 at * 5 (N.D. Ill., November 10, 2025). the Court states that the "core of *§ 227(c)* is its prohibition of "telephone solicitations." *See 47 U.S.C. § 227(c)(1)*. The Court then goes on to say that "Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted." *Mujahid v. Newity, LLC*, 2025 U.S. Dist. LEXIS 221088 at * 5 *quoting Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025) But, is that true? What about the other solicitations a person receives on their telephone through emails and APPs? Those are clearly not regulated by the TCPA.

The annoying thing about telephone calls is that they interrupt your peace. Telephone calls are a specific type of communication and Congress prohibited their use for solicitations where a person put their name on a do not call registry. The Court in *Newity* recognized its conflict with *Jones v. Blackstone Medical Services, LLC*, 2025 WL 2042764 at *4 (July 21, 2025) but failed to distinguish its logic from that of the *Jones* Court. The *Jones* Court pointed out that the statute unambiguously applies only to "telephone calls" and that the plain meaning of that term, as it applied when it was drafted and as it would be used in common conversation now, did not and does not include a "text message." The U.S. Supreme Court has said that the District Courts are not bound by agency determinations of the law but instead must use ordinary principals of statutory

9

interpretation. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 145 S. Ct. 2006, 2015 (2025) (citations omitted). Here, the Court should not enlarge the language of the statute to reach text messages when Congress has only prohibited solicitations by telephone calls.

**CONCLUSION**

Plaintiff has failed to state a cause of action against Defendant Debt Resolution Direct, LLC d/b/a Debt Advisors of America for a violation of the TCPA. The conclusory allegations about three telephone calls that Plaintiff allegedly received do not provide facts which sufficiently connect Defendant DAA to the calls. Plaintiff's own allegations related to the 2 text messages she did receive from Defendant DAA show both that she consented to receiving the texts and that the texts were not "telephone solicitations." Defendant is entitled to dismissal with prejudice based on Plaintiff's deficient pleading, even if the Court does not want to reach the question of whether text messages are covered by § 227(c)(5) of the TCPA. However, the Court should choose not to enlarge the language of the statute and should find that text messages are not covered by § 227(c)(5) of the statute.

Plaintiff's claims for injunctive relief also fail because she alleged that she received calls on one (1) day only. Plaintiff was never at risk of receiving additional calls from Defendant DAA, now or at the time she filed suit so her claims for injunctive relief for herself and the proposed classes are moot.

WHEREFORE, for the reasons set forth in its Motion to Dismiss and the Memoranda in Support of same, Defendant Debt Resolution Direct, LLC d/b/a Debt Advisors of America respectfully requests that this Honorable Court dismiss Plaintiff's Class Action Complaint with prejudice and order such other relief as is just and reasonable.

                Respectfully submitted,

November 21, 2025       /s/ Ellen Fox Davis
                Ellen Fox Davis*
                Shipkevich PLLC
                521 Fifth Avenue, Ste 1700
                New York, NY 10175
                Tel: 301-467-4299
                Fax: +1 888-568-5815
                edavis@shipkevich.com
                *Counsel for Defendant*
                **Pro Hac Vice Appearance*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of November, 2025, the foregoing Reply Memorandum in Support of the Motion Dismiss the Class Action Complaint was served on the Clerk of the Court and on all counsel via Pacer's ECF filing system.

                /s/ Ellen Fox Davis
                Ellen Fox Davis